## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER S. SLATTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-1766-NW** |
| | ) | |
| **LEGGETT AND PLATT, INC.,** | ) | |
| **d/b/a INTERNATIONAL FIBER** | ) | |
| **PACKAGING,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Christopher Slatton, asserts claims against his former employer, Leggett and Platt, Inc., doing business as International Fiber Packaging, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII"), for racial discrimination and retaliation.  Plaintiff also asserts claims against defendant for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA"), and constructive discharge.

This case is before the court on defendant's motion for summary judgment as to all of plaintiff's claims.[1]  Upon consideration of the parties' pleadings, briefs, and evidentiary submissions, the court concludes that the motion for summary judgment

---

[1] Doc. no. 15.

is due to be granted in part and denied in part for the reasons stated herein.

## I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692

---

[2] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS

Prior to its divestment in January of 2010, defendant, Leggett and Platt, Inc., doing business as International Fiber Packaging ("IFP"), operated in Florence, Alabama as a receiving and distributing outlet for various cotton-related products.[3] The company also constructed cotton-related products.[4]   Thus, IFP's business depended almost exclusively on the cotton crop, the periodic success or failure of

---

[3] Defendant's evidentiary submission, Exhibit A (Deposition of Christopher Slatton), at 13-15; defendant's evidentiary submission, Exhibit B (Deposition of Jeffrey Hughey), at 60-61.  At the summary judgment stage, the court must "recount the facts in the light most favorable to . . . the non-moving party."  *Wood v. Kesler*, 323 F.3d 872, 875 n.1 (11th Cir. 2003).  "For that reason, what [is] set out in this opinion as 'the facts' for summary judgment purposes may not be the actual facts." *Id.  See also*, *e.g.*, *Matthews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007) (same).

[4] Slatton Deposition, at 13-15; Hughey Deposition, at 60-61.

which heavily impacted the company's need for labor.[5]  At any given time, IFP's workforce consisted of mostly Caucasian ("white") employees; allegedly, no more than five percent of the workforce were African-American ("black") employees.[6] Defendant hired the plaintiff, Christopher Slatton ("Slatton"), a white male, in May of 1989 to work at its facility in Florence, Alabama.[7]

Plaintiff is diabetic, and he suffered from this condition during the entire time that he worked for defendant.[8]  IFP granted plaintiff intermittent FMLA leave in 2001 for his diabetic condition and allowed him to take leave "as needed" without penalty, provided that such leave was required because of his diabetic condition.[9]

Plaintiff's first job with IFP was a utility position, and consisted of gathering scrap wire and performing maintenance and cleanup work.[10]  Approximately a year later, plaintiff assumed the position of "Quicklinks Machine Operator."[11]  This was a manual labor job that entailed building connectors used to bind hundreds of pounds

---

[5] Slatton Deposition, at 15 (stating roughly nintey percent of IFP's production was for the cotton industry); *see also id.* at 40 (stating that "[e]verything revolved around the cotton crop" and admitting that success of cotton crop impacted employment at IFP).

[6] *See* Slatton Deposition, at 70-71, 197-99; Hughey Deposition, at 14, 89, 93; *see also id*. at Exhibit 6.

[7] Slatton Deposition, at 43, 59.

[8] *Id.* at 94; *see also* doc. no. 25, at 2.

[9] *E.g.*, plaintiff's evidentiary submission, Exhibit A (Declaration of Christopher Slatton), at 1; Hughey Deposition, at 144.

[10] Slatton Deposition, at 13.

[11] *Id.* at 20.

4

of cotton together.[12]    After a couple of years of operating the quicklinks machine, plaintiff began to experience pain in his lower back, right elbow, and left knee.[13]  As a result, IFP transferred plaintiff to the position of "Quality Control Inspector" in approximately April of 1994.[14]  He worked the day shift while Henry Shoulders, a black male who had been trained by plaintiff, served as the night shift Quality Control Inspector.[15]

At some point during the next few years, plaintiff began to feel that he was the victim of racial discrimination.  He believed that IFP Plant Manager, Darrel Champion, also a white male, "was prejudiced against white people."[16]  Mr. Champion told plaintiff:  "If Henry Shoulders needs something . . . you see that he gets it."[17] Mr. Champion was "cordial [and] nice to Henry [Shoulders]," but he talked to plaintiff in "[d]emanding tones."[18]  Plaintiff alleges that he was given twice the amount of work on the day shift that Mr. Shoulders was given on the night shift, and he once had to "get pencils" for Mr. Shoulders.[19]  Plaintiff admits, however, that

---

[12] *Id.* at 14-16.

[13] *Id.* at 97-99, 102-105.

[14] *Id.* at 60.

[15] Slatton Deposition, at 61; *see also* Slatton Declaration, at 5.

[16] Slatton Deposition, at 69.

[17] *Id.* at 66.

[18] *Id.* at 123-24.

[19] *Id.* at 54-55, 64-65.

fewer employees and managers were present during the company's night shift operations.[20]

Plaintiff claims to have reported the alleged racial discrimination to his supervisor.[21]  Plaintiff also purportedly complained to IFP's Human Resources Department, although he admits that he did not follow the company's procedures for reporting discrimination in the workplace.[22]  In any event, nothing came of plaintiff's alleged reports of discrimination, and he continued his work as the day shift Quality Control Inspector.[23]

In October of 2007, IFP elected to temporarily reduce its workforce due to a dismal forecast of the upcoming cotton crop.[24]  To that end, IFP used an evaluation system to select the employees that were to be laid off.[25]  The system was based on a set of criteria designed to evaluate overall job performance.[26]  The criteria included job skills, tenure, disciplinary record, safety record, attendance, and quality/quantity

---

[20] *Id.* at 62.

[21] Slatton Deposition, at 53-54.

[22] *Id.* at 60-61, 78.

[23] Slatton Declaration, at 8.

[24] Hughey Deposition, Exhibit 3.

[25] *Id.* at 71.

[26] *Id.* at 71, 169.

standards.[27]  IFP used a point scale to rate the employees in each of these criteria.[28] The overall points were totaled, and IFP selected the employees with the lowest scores for layoff.[29]

In an effort to further reduce costs, IFP decided to eliminate one of the Quality Control Inspector positions.[30]  The company compared the performance scores of its two Quality Control Inspectors, plaintiff and Henry Shoulders.[31]  Plaintiff had a lower score and Mr. Shoulders was, accordingly, selected to retain the sole Quality Control Inspector position.[32]  Instead of laying plaintiff off, however, IFP temporarily transferred him to a warehouse position.[33]  Although the warehouse position typically earned less, IFP did not reduce plaintiff's rate of pay.[34]  In early January of 2008, the company recalled those who had been laid off in October of 2007.[35]  Plaintiff also resumed his work as a Quality Control Inspector.[36]

---

[27] *Id.* at 71; *see also id.* at Exhibit 4 (sample evaluation tool used for implementing reduction in force).

[28] *Id.* at Exhibit 4.

[29] Hughey Deposition, at 168; *see also id.* at Exhibit 3.

[30] *Id.* at 108-10; *see also id.* at Exhibit 7.

[31] *Id.* at Exhibit 3.

[32] *Id.* at Exhibits 3, 7.

[33] *E.g.*, *id.* at Exhibit 3.

[34] Slatton Deposition, at 185-86; Hughey Deposition, Exhibit 3.

[35] Hughey Deposition, Exhibit 3.

[36] *Id.*

The 2008 cotton crop did not improve as anticipated by IFP, however.[37]  As a result, in July of 2008 the company elected to take more permanent cost reduction measures and eliminate its second shift entirely.[38]  IFP needed to retain only one Quality Control Inspector.[39]  Once again, IFP evaluated plaintiff and Henry Shoulders and compared their final scores.[40]  Plaintiff scored five fewer points than Shoulders.[41] He received equal or more points than Mr. Shoulders in every category except the attendance category.[42]  The lower score was due to three absences taken by plaintiff in February and March of  2008.[43]  He claims that those absences were medically necessary due to his diabetic condition, for which he had been granted intermittent leave.[44]  He further claims that he reported each absence as such, and received approval to take FMLA leave from his supervisors.[45]  Had plaintiff not lost points for these FMLA-approved absences, he would have had a higher score than Henry

---

[37] *Id.*

[38] *Id.*; Slatton Deposition, at 150.

[39] Hughey Deposition, at 108-10; *see also id.* at Exhibit 3.

[40] *Id.*

[41] Hughey Deposition, at 122; Slatton Deposition, Exhibit 3.

[42] Hughey Deposition, at 122; Slatton Deposition, Exhibit 3.

[43] Slatton Deposition, at 128; *see also id.* at Exhibit 3; Hughey Deposition, at 131; *see also id.* at Exhibit 4.

[44] Slatton Declaration, at 1-4.

[45] *Id.*

Shoulders on the points-based system used by IFP.[46]

Even so, Henry Shoulders was selected to keep the sole Quality Control Inspector position in July of 2008, a decision that IFP claims it made solely based upon its points-based assessment of plaintiff and Mr. Shoulders.[47]   Again, however, plaintiff was allowed to transfer to another position and avoid the layoff.[48]   This transfer was to plaintiff's previous position of Quicklinks Machine Operator.[49]   IFP reduced his pay to reflect the lower position to which he had been assigned.[50] Plaintiff operated the quicklinks machine for only a few days before he complained that it was causing him pain.[51]

IFP referred plaintiff to his physician, Dr. Tim Ashley, who released him for work with the following restrictions:   no lifting more than twenty-five pounds because of his lower back pain; no lifting more than ten pounds because of his right elbow pain; and no climbing or squatting because of his left knee pain.[52]   Dr. Ashley further concluded that plaintiff was not physically able to perform the duties of a

---

[46] *Id.* at 5-8; Hughey Deposition, at 132.

[47] Hughey Deposition, at 80-83; *see also* doc. no. 16, at 8.

[48] Hughey Deposition, Exhibit 3.

[49] *Id.* at 80, 157; *see also id.* at Exhibit 3.

[50] Slatton Deposition, at 150.

[51] *Id.* at 151.

[52] *Id.* at 152-53, 173-74; *see also id.* at Exhibit 4.

Quicklinks Machine Operator.[53]

Plaintiff knew that he could perform the duties of a Quality Control Inspector with his restrictions and asked to return to that job.[54]  Henry Shoulders occupied the only Quality Control Inspector position available, however, and there was no other job position at IFP that plaintiff could have performed with his medical restrictions.[55] Thus, IFP placed plaintiff on a medical leave of absence and instructed him to inform the company once his restrictions were lifted or modified.[56]

Significantly, IFP eliminated the Quality Control Inspector position altogether in early December of 2008 and, as a result, Henry Shoulders was laid off.[57]

Plaintiff never followed up with IFP about his medical restrictions, which are allegedly still in effect.[58]  He  remained on IFP's payroll as an inactive employee on a medical leave of absence until January of 2010, when the IFP facility in Florence,

---

[53] *Id.* at 155; *see also id.* at Exhibits 4, 6 (stating plaintiff was not able to perform essential functions of his position and that he could not safely perform his job duties).

[54] *Id.* at 156; *see also id.* at Exhibits 13-17 (asking to return to Quality Control Inspector position as a reasonable accommodation).

[55] Slatton Deposition, at 184-85; Hughey Deposition, Exhibit 3.

[56] Hughey Deposition, at 180; *see also id.* at Exhibit 3.

[57] Defendant's evidentiary submission, Exhibit C (Employment Separation Form of Henry Shoulders) (reflecting Henry Shoulders was laid off because of lack of work); *see also* Slatton Deposition, at 167-68.

[58] Slatton Deposition, at 179-80, 189.

Alabama was divested.[59]  Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") on August 21, 2008.[60]  The EEOC

issued a Notice of plaintiff's Right to Sue on June 4, 2009.[61]  He received that letter

on June 5, 2009 and filed this action on September 3, 2009.[62]

## III.  DISCUSSION

A.    **Plaintiff's Discrimination Claims Under 42 U.S.C. § 1981 and Title VII**

1.    **Direct evidence of discrimination**

Title VII and 42 U.S.C. § 1981 make it an unlawful employment practice for

an employer to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race.

*See* 42 U.S.C. §§ 1981(a), 2000e-2(a).  *See also*, *e.g.*, *Johnson v. Railway Express

Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against

discrimination in private employment on the basis of race.").   A plaintiff may

establish a *prima facie* case of discrimination through either direct or circumstantial

evidence.  *See*, *e.g.*, *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354,

---

[59] Hughey Deposition, at 61, 159-60 (stating divestiture of Florence facility occurred in January 2010); *see also id.* at Exhibit 16 (reflecting that plaintiff was placed on a medical leave of absence effective August 4, 2008).

[60] Doc. no. 1, Exhibit A.

[61] *Id.* at Exhibit B.

[62] *Id.* ¶ 7.

11

1358 (11th Cir. 1999).   Plaintiff first argues that there is direct evidence of

discrimination in this case.   To support this assertion, he offers only the following

allegations, without a single citation to the record:

> In this matter, Slatton has produced direct evidence of
> discriminatory intent sufficient to prove his claim.  The evidence here,
> established by Slatton's testimony shows that Darrel Champion
> ("Champion"), Slatton's immediate supervisor, regularly exhibited
> racially discriminatory conduct, including making Slatton work harder
> than Shoulders and even fetch pencils for Shoulders which Shoulders
> could have gotten for himself.  Champion made it clear to Slatton that
> Champion wanted to appease Shoulders because Shoulders is black.
> Slatton complained about Champion's discriminatory conduct to his
> supervisors and to HR personnel.  However, no action was taken to stop
> the racial discrimination.

> Champion and IFP made false statements, in writing and verbally,
> regarding Slatton's attendance which were utilized to first demote
> Slatton and then to constructively terminate Slatton.[63]

Direct evidence of discrimination exists only in rare cases.  *See*, *e.g.*, *United

States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983)

("There will seldom be 'eyewitness' testimony as to the employer's mental

processes."); *see also* I Barbara Lindeman & Paul Grossman, *Employment

Discrimination Law* 11 (4th ed. 2007) ("Because direct evidence of discrimination .

. . is rare, case law has largely focused on when to infer a defendant's discriminatory

intent from circumstantial evidence.").

---

[63] Doc. no. 27, at 19-20.

12

The Eleventh Circuit defines direct evidence "as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Damon*, 196 F.3d at 1358 (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)) (internal quotation marks omitted). "[T]he evidence must indicate that the complained-of employment decision was motivated by the decision-maker's [racial animus]." *Damon*, 196 F.3d at 1358-59 (citing *Early v. Champion International Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)). To qualify as direct evidence of discrimination, the Eleventh Circuit requires that a biased statement by a decisionmaker be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision. *See Damon*, 196 F.3d at 1359 (noting that "only the most blatant remarks, whose intent could be nothing other than to discriminate" constitute direct evidence); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (explaining that direct evidence is "evidence that, if believed, proves [the] existence of [a] fact in issue without inference or presumption"); *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999) (same).

The record in this case is devoid of anything that even colorably amounts to direct evidence of discrimination. Curiously, the alleged facts relied upon by plaintiff actually negate his argument that this is a direct evidence case. The only allegation

13

made by him that even relates to an adverse employment action indicates that such action was due to "false statements . . . regarding Slatton's attendance."[64]  It was these "false statements," according to plaintiff, that led first to his demotion and then to a so-called constructive termination.[65]  These statements were related solely to the reasons given for plaintiff's absences in the early months of 2008.  The crux of plaintiff's case is the assertion that his supervisors "wrongfully and illegally" failed to document his absences as excused under the FMLA.[66]  Such acts had nothing to do with his race.  Plaintiff has, therefore, failed to direct this court's attention to any direct evidence establishing that the complained-of employment decisions were made with a racially discriminatory animus.

Even though this court is under no obligation to do so,[67] it has conducted its own review of the record, and was unable to find anything amounting to "direct evidence" of discrimination.

## 2.    Circumstantial evidence of discrimination

Plaintiff next argues, as an alternative to his direct evidence theory, that he has

---

[64]  Doc. no. 27, at 19-20.

[65]  Doc. no. 27, at 19-20.

[66]  *E.g.*, Slatton Declaration at 7.

[67]  The court is allowed to rely upon the facts and issues set out by the parties, and is not required itself to search through all of the parties' evidentiary submissions.  *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

14

presented sufficient circumstantial evidence of discrimination.[68]  Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."[69]  42 U.S.C. § 1981(a).  Claims of race discrimination under § 1981 are analyzed in the same manner as disparate treatment claims brought under Title VII.  *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that, because Title VII and § 1981 have the same requirements of proof and use the same analytical framework, the court should

---

[68] Doc. no. 47, at 29.

[69] It is of no consequence under 42 U.S.C. § 1981 that plaintiff is white, rather than black. It is well settled that the rights protected under § 1981 are not limited to African-American employees. *See, e.g., Schwartz v. State of Fla.*, 494 F. Supp. 574, 583 (N.D. Fla. 1980) ("It is now established that Title VII, as well as § 1981, prohibits racial discrimination in employment against White persons as well as non-Whites, and the same standards are applicable to instances of discrimination against either race.") (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976)).

15

analyze race discrimination claims under both laws simultaneously).

Where, as here, the plaintiff seeks to prove intentional discrimination by using circumstantial evidence to show a racial animus, the court must analyze the case using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that now familiar framework, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable fact-finder to determine that he has satisfied the elements of a *prima facie* case.  *Id.* at 802.  To make out a *prima facie* case of disparate treatment and discrimination, the plaintiff can show that:  (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably than he was treated; and (4) he was qualified to perform the duties of his job.  *E.g.*, *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006).

IFP has elected not to dispute that plaintiff has demonstrated a *prima facie* case of racial discrimination and disparate treatment.[70]  As a white male, Christopher Slatton is a member of a protected class.  *See, e.g.*, *Schwartz v. State of Florida*, 494 F. Supp. 574, 583 (N.D. Fla. 1980) ("It is now established that Title VII, as well as

---

[70] *See* doc. no. 16, at 14 ("Assuming *arguendo* that Plaintiff can establish a *prima facie* case of discriminatory or retaliatory demotion, his claim still fails as a matter of law. . . .").

16

§ 1981, prohibits racial discrimination in employment against White persons as well as non-Whites, and the same standards are applicable to instances of discrimination against either race.") (citing *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 280 (1976)).  The court accepts plaintiff's assertion that his July 2008 demotion, which resulted in a loss of pay, constituted an "adverse employment action" for the purposes of establishing a *prima facie* case of disparate treatment and discrimination. *See  Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1238-39 (11th Cir. 2001) (noting that an adverse employment action can arise out of the economic consequences of an employer's decision).  Moreover, the record clearly provides that  Henry Shoulders, a black male who is outside of plaintiff's protected class, was treated more favorably than plaintiff.  These individuals performed the same job under nearly identical circumstances, and defendant chose Mr. Shoulders, instead of plaintiff, to keep that job while plaintiff was demoted.[71]  Finally, plaintiff, with nearly two decades of experience working for defendant, was undoubtedly qualified to perform the duties of his job.  The court is satisfied, and the parties do not dispute, that plaintiff has presented sufficient evidence to satisfy the elements of a *prima facie* case of racial discrimination and disparate treatment.

Because a *prima facie* case is deemed to have been established, the burden

---

[71]*See*, *e.g.*, Hughey Deposition, at 80-83; *see also* doc. no. 16, at 8.

shifts to the defendant to rebut the resulting presumption of race-based discrimination by producing evidence that it acted for a legitimate, non-discriminatory reason. *McDonnell Douglas*, 411 U.S. at 802. This burden is "exceedingly light." *Meeks v. Computer Associates, International*, 15 F.3d 1013, 1021 (11th Cir. 1994). IFP need not persuade this court that it was actually motivated by the proffered reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff.

IFP has met its "exceedingly light" burden. According to the company, it demoted plaintiff based upon its assessment that he had fewer points than Henry Shoulders on the layoff selection tool used by IFP. The company established this through the testimony of its corporate representative, Jeffery Hughey, and myriad documents.[72] IFP utilized specific job performance criteria to determine whether to layoff plaintiff (who was demoted instead) or Shoulders.[73] Plaintiff received equal or higher scores than Shoulders in all categories except attendance, which resulted in plaintiff receiving five fewer points than Shoulders.[74] The court is satisfied that IFP has produced sufficient evidence that it demoted plaintiff (as opposed to laying

---

[72] Hughey Deposition, at 80-83, 130-31; *see also id.* at Exhibit 23; Slatton Deposition, Exhibit 3.

[73] Hughey Deposition, Exhibit 3; *see also* Slatton Deposition, at 42-43, 148-49.

[74] Hughey Deposition, at 122; Slatton Deposition, Exhibit 3.

him off) for a legitimate, non-discriminatory reason:  Plaintiff's performance score was lower than that of Henry Shoulders.[75]

Once a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Texas Department of Community of Affairs v. Burdine*, 450 U.S. 248, 257 (1973), then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case[76] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

In this final step of the analytical process, the burden shifts back to the plaintiff to "come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely a pretext for intentional discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("If the proffered reason is one

---

[75] *Id.*

[76] *See Burdine*, 450 U.S. at 254 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption [of discrimination]").

that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient.") (internal citation omitted).  The plaintiff shoulders this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1528 (citation omitted); *see also Silvera v. Orange County School Board*, 244 F.3d 1253, 1258 (11th Cir. 2001).

Despite plaintiff's claim that IFP's decisions were merely a pretext for intentional racial discrimination, he has produced no evidence to support this assertion.  His proffered "evidence" consists of nothing more than unsupported allegations, such as:  "IFP gave Henry Shoulders the Quality Control Inspector position in July 2008 because he was black — not because he had more points than I had."[77]  Naked allegations do not establish pretext, and will not defeat a motion for summary judgement.  *See, e.g.*, *Young v. General Foods Corp*., 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination.").  Accordingly, there are no genuine issues of material fact regarding IFP's

---

[77] Slatton Declaration, at 8.

discrimination claims, and defendant is entitled to summary judgment on these claims.[78]

### 3.   Plaintiff's retaliation claims under 42 U.S.C. § 1981 and Title VII

Plaintiff also claims that IFP retaliated against him for reporting the alleged racial discrimination.  Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]."  42 U.S.C. § 2000e-3(a).  Even though the text of 42 U.S.C. § 1981 does not contain a specific prohibition against

---

[78] Defendant contends that, to the extent plaintiff alleges he was subjected to a hostile work environment at IFP, such a claim fails as a matter of law.  Doc. no. 27, at 9-10.  Specifically, defendant argues that plaintiff was "not subjected to sufficiently severe or pervasive conduct."  *Id.* at 9 (emphasis omitted).  At no point in plaintiff's complaint does he allege a claim for hostile work environment.  *See* doc no. 1.  Though plaintiff mentions the words "hostile work environment" in sections throughout his brief, he does not present even a perfunctory argument that he was subjected to such an environment.  *See* doc. no. 25, at 20, 22 (stating that plaintiff has sufficient evidence of "Discrimination/Harassment/Hostile Working Environment" but failing to argue or further mention any alleged claim for "Harassment/Hostile Working Environment.")  The court must, therefore, conclude that plaintiff has not alleged a hostile work environment claim in this action, and for good reason.  The record in no way supports a triable issue on this matter.  Plaintiff, a white male, has presented evidence only that:  he was asked to get pencils for Henry Shoulders, a black male; he was required to perform more work on the day shift than the same man, who worked the night shift; and the plant manager spoke to him in more "[d]emanding tones" than he did Mr. Shoulders.  Slatton Deposition, at 54-55, 64-65, 123-24.  This evidence falls well short of the kind necessary to establish a hostile work environment claim under Title VII or 42 U.S.C. § 1981.  *See*, *e.g.*, *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (To establish a claim for hostile work environment under Title VII or § 1981, a plaintiff must produce evidence that "'the workplace is *permeated with discriminatory intimidation, ridicule, and insult*, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)) (emphasis supplied).

retaliation, the Supreme Court has held that retaliation claims asserted in the context of a complaint of racial discrimination, and arising after the effective date of the Civil Rights Act of 1991, are cognizable under that statute. *CROCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). *See also*, *e.g.*, *Webster v. Fulton County, Georgia*, 283 F.3d 1254, 1256 (11th Cir. 2002) (holding that "[w]e have previously concluded that Section 1981 supports a retaliation cause of action") (citing *Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1409-13 (11th Cir. 1998) (concluding that § 1981 retaliation claims are cognizable after the 1991 amendment to that statute, but explaining that the question of whether a specific claim is cognizable depends upon the specific nature of the retaliation claim)); *Jackson v. Motel 6 Multipurpose, Inc*., 130 F.3d 999, 1007 (11th Cir. 1997) (observing that § 1981 retaliation claim lies for a plaintiff's opposition to race discrimination, regardless of whether the plaintiff is personally the victim of that race discrimination); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1229 (5th Cir. Unit B 1982)[79] (recognizing that § 1981 claims "may be based upon retaliatory action taken against an employee for the employee's lawful advocacy of the rights of racial minorities").

---

[79] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the "Unit B" panel of the former Fifth Circuit handed down after September 30, 1981.

To establish a claim of retaliation under either Title VII or § 1981, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was some causal relation between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)). If a plaintiff establishes a *prima facie* case, the employer then must proffer a legitimate, non-discriminatory, and non-retaliatory reason for the adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is pretext for discrimination or retaliation. *Id.*

Although he does not provide specific dates, or even a general timeframe, Christopher Slatton claims that he "complained to [his] supervisors and IFP's Human Resources Department about the racial discrimination [he] was subjected to."[80] Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission.[81] The court must, accordingly, conclude that plaintiff did engage in protected activity and has met the first element of a *prima facie* case of

---

[80] Slatton Declaration, at 8; *see also* Slatton Deposition, at 60-61.

[81] *See* doc. no. 1, Exhibit A.

race-based retaliation.

The court is also satisfied that a reasonable employee would find a demotion to a lower paying position sufficient to dissuade that employee from engaging in further protected activity. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (holding that, in order to sustain a Title VII retaliation claim, an employee must show that "a reasonable employee would have found the challenged action materially adverse," such that the action would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination").

Nevertheless, plaintiff has failed to establish the third element of a *prima facie* case because he cannot demonstrate a causal link between his complaints of racial discrimination and the adverse employment action. A plaintiff may establish the requisite causal connection by showing that "the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir. 1985). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith*, 996 F.2d at 1163 (citations omitted).

On this issue, plaintiff provides no argument or analysis whatsoever. In his response brief, plaintiff recites the applicable law and merely states: "When viewing *the evidence* in the light most favorable to Slatton, a reasonable jury could find that

24

Slatton engaged in a [sic] statutorily protected conduct and that his conduct was causally connected to his termination."[82]  The court is under no obligation to give consideration to arguments that are not fully developed or bolstered with legal authority.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  *See also Lyes v. City of Riviera Beach, Florida*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").

Even so, the court has sifted through the record and  is confounded as to what "evidence" plaintiff is relying upon.  Assuming that plaintiff's informal complaints about discrimination even qualify as protected activity, nothing in the record establishes that a relevant decisionmaker had knowledge of those complaints prior to plaintiff's demotion in July of 2008.  *See*, *e.g.*, *Strickland v. Water Works & Sewer Board of Commissioners*, 239 F.3d 1199, 1208 (11th Cir. 2001) ("A decision maker

---

[82] Doc. no. 25, at 27-28 (emphasis supplied).

cannot have been motivated to retaliate by something unknown to him."); *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[A] plaintiff must, *at a minimum*, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.") (emphasis supplied). Moreover, plaintiff filed his EEOC charge *after* his demotion. There can be no causal connection when the adverse employment action occurred prior to the protected activity. *See Byrne v. Alabama Alcoholic Beverage Control Board*, 635 F. Supp. 2d 1281, 1300 (M.D. Ala. 2009) ("[E]vidence of an employer's concerns about an employee's performance *before the employee's protected activity* undercuts a finding of causation.") (citations omitted and emphasis supplied). Thus, because plaintiff has failed to establish a casual connection between his complaints of racial discrimination and an adverse employment action, he cannot establish a *prima facie* case of retaliation under either Title VII or 42 U.S.C. § 1981, and defendant is entitled to summary judgment on these claims.

Moreover, even if plaintiff could establish a *prima facie* case, he still has failed to present evidence that IFP's proffered legitimate, non-discriminatory reasons for his demotion amounted to mere pretext and retaliation for plaintiff's complaints of racial discrimination. As explained more fully above, plaintiff offers only conclusory statements such as: "IFP gave Henry Shoulders the Quality Control Inspector

26

position in July 2008 because he was black — not because he had more points than

I had."[83]  Accordingly, IFP would be entitled to summary judgment on plaintiff's Title

VII and § 1981 retaliation claims, even if he had established a *prima facie* case.

## B.   Plaintiff's Constructive Discharge Claim

Although plaintiff does not specifically allege a claim for constructive

discharge, a liberal reading of the complaint may support such a claim.[84]  IFP afforded

plaintiff this generous interpretation and moved for summary judgment on the claim.

The Eleventh Circuit recently explained the law governing constructive discharge in

*Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009), as follows:

> "Constructive discharge occurs when an employer deliberately makes an
> employee's working conditions intolerable and thereby forces him to
> quit his job."  *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d
> 239, 244 (4th Cir. 1997); *accord Young v. Southwestern Savings and
> Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ("The general rule is that
> if the employer deliberately makes an employee's working conditions
> so intolerable that the employee is forced into an involuntary
> resignation, then the employer has encompassed a constructive

---

[83] Slatton Declaration, at 8.

[84] Plaintiff alleges four counts in the complaint.  In Count I, he alleges racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981.  Count II is a claim that defendant refused to accommodate plaintiff's disabilities and, thereby, discriminated against him in violation of the ADA. Plaintiff alleges in Count III that defendant interfered with his FMLA rights.  Finally, in Count IV, plaintiff alleges that defendant retaliated against him when he attempted to exercise his FMLA rights.  *See* doc. no. 1.  Even though he does not specifically state a claim for constructive discharge, plaintiff avers that he was constructively discharged or terminated in copy/paste fashion throughout his entire complaint.  *See, e.g.*, doc. no. 1, ¶ 18, at 7 ("Slatton began working for Leggett . . . on or about May 25, 1989, and was continuously employed by Leggett until he was wrongfully constructively terminated on or about July 17, 2008.").

discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."). A plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994); *see also Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see also Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316-18 (11th Cir. 1989) (affirming district court's finding that plaintiffs established that they were subjected to a hostile work environment but were not constructively discharged); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905-06 (11th Cir. 1988) (same).

*Id.* at 1298-99 (footnotes omitted).

IFP argues that plaintiff "cannot satisfy the high burden required to prove constructive [discharge]."[85] Specifically, IFP argues that "Mr. Champion's 'demanding' tone, request that Plaintiff park on IFP property, offering to transfer Plaintiff from Quality Control to Quicklinks Operator in lieu of layoff, and the differing workloads between Plaintiff's day shift versus Mr. Shoulders' night shift (which had fewer employees and fewer management) fall way short of working conditions 'so intolerable that a reasonable person . . . would have been compelled

---

[85] Doc. no. 16, at 17.

to resign.'"[86]

Plaintiff offers no response to IFP's sound and supported argument.  Indeed,

plaintiff does not mention a constructive discharge claim in his brief in opposition to

IFP's motion for summary judgment.[87]  It is well settled that issues and contentions

not raised in a party's response brief are deemed abandoned.  *See*, *e.g.*, *Chapman v.*

*AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("Parties opposing summary

judgment are appropriately charged with the responsibility of marshaling and

presenting their evidence before summary judgment is granted, not afterwards.").

> In opposing a motion for summary judgment, a party may not rely on his
> pleadings to avoid judgment against him.  There is no burden on the
> district court to distill every potential argument that could be made
> based upon the materials before it on summary judgment.  Rather, the
> onus is upon the parties to formulate arguments; grounds alleged in the
> complaint but not relied upon in summary judgment are deemed
> abandoned . . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations

and internal quotation marks omitted).  Therefore, to the extent that plaintiff alleged

a constructive discharge claim, he has abandoned it, and defendant is entitled to

summary judgment.

## C.    Plaintiff's ADA and Rehabilitation Act Claims

---

[86] Doc no. 16, at 17-18 (citing *Fitz v. Pugmire Lincoln-Mercury*, *Inc.*, 348 F.3d 974, 977 (11th Cir. 2003)).

[87] *See* docs. no. 24-25.

Plaintiff, Christopher Slatton, also neglected to argue his ADA and Rehabilitation Act claims in his brief opposing summary judgment.[88]  In Count II of the complaint, he alleges that IFP discriminated against him because of his alleged disabilities, and failed to provide him with a reasonable accommodation when it refused to allow him to retain the Quality Control Inspector position.[89]  It is undisputed that in July of 2008 IFP had only one Quality Control Inspector position, and that Henry Shoulders occupied that position.[90]  Further, it is undisputed (and plaintiff even admits) that, given plaintiff's medically-related restrictions, plaintiff could not perform the duties of any other job in the IFP plant.[91]  Defendant, however, accurately notes that the law does not require an employer to remove another employee from a position in order to accommodate a disabled employee.  *See*, *e.g.*, *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001) (holding that ADA did not require the employer to reassign plaintiff to a customer service position because reassignment would have involved bumping another employee); *Richardson*

---

[88] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. . . ."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)) (footnote omitted); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997).  Thus, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice versa."  *Cash*, 231 F.3d at 1305 n.2 (citing *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1132 n.2 (11th Cir. 1996)).

[89] Doc. no. 1, ¶¶ 14-32.

[90] *E.g.*, Hughey Deposition, at 80-83.

[91] Slatton Deposition, at 184-85.

30

*v. Honda Manufacturing of Alabama*, 635 F. Supp. 2d 1261, 1281 (N.D. Ala. 2009)
("[A]n employer's duty to reasonably accommodate under the ADA does not require
it to reassign one employee from his or her sit-down tugger position to an existing
standup tugger vacant position in order to create a sit-down tugger job vacancy for
[plaintiff] to fill.").

Although plaintiff's response brief does include a section entitled "Slatton's
ADA Claim," the section does not actually address the claim alleged in his
complaint.[92]  Instead, plaintiff, again, makes bald accusations, without citation to the
record, and argues that IFP retaliated against him for requesting a reasonable
accommodation.[93]  The rub lies in the fact that plaintiff did not plead a claim for
retaliation under the ADA.[94]  Therefore, that claim is not properly before the court.
*See*, *e.g.*, *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)
("A plaintiff may not amend h[is] complaint through argument in a brief opposing
summary judgment."); *see also Thampi v. Manatee County Board of Commissioners*,
384 Fed. Appx. 983, 988 (11th Cir. 2010) ("[E]ven [a] liberal pleading standard . . .
'does not afford plaintiffs with an opportunity to raise new claims at the summary
judgment stage.'" (quoting *Gilmour*, 382 F.3d at 1314)).  Plaintiff has offered no

---

[92] *See* doc. no. 25, at 28-29.

[93] *See id.*

[94] *See* doc. no. 1; *see also supra* note 84.

response to IFP's argument that it is entitled to judgment as a matter of law on plaintiff's ADA and Rehabilitation Act claims.  For that reason, and because plaintiff completely failed to argue these claims in his response brief, the court deems plaintiff's claims under the ADA and Rehabilitation Act to have been abandoned. *See Resolution Trust Corp.*, 43 F.3d at 599 ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him."). Defendant is, therefore, entitled to summary judgment on these claims.

**D.     Plaintiff's FMLA Claims**

The FMLA grants an eligible employee the right to take up to twelve workweeks of unpaid leave annually for any one or more of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In addition to taking twelve weeks of leave at once, an employee may take intermittent leave in separate blocks of time because of a single qualifying medical condition.  *See* 29 C.F.R. § 825.202(a).  The Act creates a private right of action against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided by the FMLA.  29 U.S.C. §§ 2615(a)(1), 2617(a); *see also Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 724-25 (2003); *Hurlbert v. St. Mary's Health Care*, 439 F.3d 1286, 1293-94 (11th Cir. 2006).  The

Eleventh Circuit has recognized that "§ 2615(a) creates two types of claims: 'interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'" *Hulbert*, 439 F.3d at 1293 (quoting *Strickland v. Water Works & Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)) (internal citations omitted).  Plaintiff alleges each of these claim categories in the present action.

### 1.     Plaintiff's FMLA interference claim

To establish an FMLA interference claim, "an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008).  *See also* 29 U.S.C. § 2615(a)(1); *Strickland*, 239 F.3d at 1206-07.  An eligible employee who takes FMLA leave is entitled to "any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."   29 U.S.C. § 2614(a)(3).  The employee need not "allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland*, 239 F.3d at 1208.

The parties do not dispute that plaintiff's job performance score reflected a

penalty for his early 2008 absences.[95]  It is further undisputable that plaintiff's score would have been higher than Henry Shoulder's score, had those absences not been counted against him.[96]  The result is evident:  if plaintiff had not lost points for his absences, he would have been entitled to retain the Quality Control Inspector position under the criteria that IFP claims to have exclusively relied upon in making its decision.   The court is satisfied — and IFP apparently does not disagree — that *if plaintiff's absences were FMLA-protected*,  IFP deprived him of a benefit to which he would have been entitled, had he not been absent, and it violated the FMLA in doing so.  *See* 29 U.S.C. § 2614(a)(3).  This conclusion is bolstered by regulatory language which states:  "employers cannot use the taking of FMLA leave *as a negative factor in employment actions*, such as hiring, promotions, or disciplinary actions . . . ."  29 C.F.R. § 825.220(c) (emphasis supplied).  Moreover, it cannot be said that, upon returning from his allegedly FMLA-protected absences, plaintiff was restored to the same or equivalent position.  *See* 29 U.S.C. § 2614(a)(1)(A)-(B).  Each absence for which plaintiff was penalized made him a more likely target for layoff.

The parties' dispute, however, focuses upon whether plaintiff's absences were protected by the FMLA.  IFP argues that "the absences at issue were not FMLA-

---

[95] Slatton Declaration, at 4; Hughey Deposition, at 131; *see also id.* at Exhibit 4.

[96] *See* Slatton Declaration, at 8-9; Hughey Deposition, at 130-32, 138-39.

protected because Plaintiff failed to provide sufficient information to put IFP on notice that those absences were FMLA-protected."[97]   IFP approved plaintiff for intermittent FMLA leave in 2001, after a physician certified the leave as necessary due to his diabetic condition.[98]   According to Jeffrey Hughey, IFP's corporate representative, "intermittent leave" means "leave as needed."[99]   *See* 29 U.S.C. § 2612(b)(1) (recognizing that intermittent FMLA leave is permissible when medically necessary due to a serious health condition that makes the employee unable to perform his or her job); 29 C.F.R. § 825.202(a) (providing that an employee may take FMLA intermittent leave in separate blocks of time because of a single qualifying medical reason).   Mr. Hughey further stated that the company depended upon the employee "to let [it] know" when "he was missing a day due to the intermittent condition."[100]   Pursuant to IFP policy, "if [the employee had] notified the supervisor that the leave was connected to the intermittent FMLA [condition], then he would have not been pointed" under the layoff selection system.[101]   Plaintiff has produced evidence that he did exactly that.[102]   He testified that he reported all of the absences

---

[97] Doc. no. 27, at 7.

[98] Hughey Deposition, at 144-45.

[99] *Id.*

[100] *Id.* at 145.

[101] *Id.* at 145-46.

[102] Slatton Declaration, at 1-4.

at issue as medically necessary due to his diabetic condition, and that he requested FMLA leave for each absence.[103]   Plaintiff provided specific details about his absences, and stated that his "supervisor specifically gave [him] permission and authority to take intermittent FMLA leave" for each absence.[104]

IFP disputes the facts provided by plaintiff in his declaration opposing summary judgment.   To that end, the company relies upon its documentation of plaintiff's absences.  According to IFP's "Absence Report" form, plaintiff was absent on February 26, 2008 because he was "Going to the Doctor."[105]  On the same standard form, plaintiff's March 6, 2008 absence was allegedly due to a "sick virus."[106]  The need for plaintiff's March 26, 2008 absence is documented as "Tooth pulled."[107]  IFP argues that this information was insufficient to put the company on notice that plaintiff's absences were related to his diabetic condition.[108]  Significantly, plaintiff did not sign or even fill out any of these forms.  Indeed, the document specifically provides that *the supervisor*, *not the employee*, is to "[f]ill out th[e] form and turn it

---

[103] *Id.*

[104] *Id.*

[105] Hughey Deposition, Exhibit 23.

[106] *Id.*

[107] *Id.*

[108] *Id.*

in to the Accounting Office ASAP."[109]   The forms reflect only the signatures of

plaintiff's supervisor and the plant manager, Darrel Champion.[110]

Thus, the parties have each produced evidence on the issue of whether plaintiff

gave IFP notice that his early 2008 absences were related to, and therefore excused

under, his approved intermittent FMLA leave.   A reasonable factfinder could find for

either party on this issue.   Again, if plaintiff had been excused and not penalized for

these absences, he would have retained his position as Quality Control Inspector.

Plaintiff has, therefore, demonstrated a genuine issue of material fact as to his FMLA

interference claim, and summary judgment is due to be denied on that claim.

### 2.      Plaintiff's FMLA retaliation claim

In order to establish a claim for FMLA retaliation, "an employee must show

that his employer intentionally discriminated against him for exercising an FMLA

right."   *Martin*, 543 F.3d at 1267; *see also* 29 U.S.C. § 2615(a)(2); 29 C.F.R. §

825.220(c).   Unlike an interference claim, an employee "bringing a retaliation claim

faces the increased burden of showing that his employer's actions were motivated by

an impermissible retaliatory or discriminatory animus."   *Strickland*, 239 F.3d at 1207

(internal quotation marks omitted).   Where, as here, the plaintiff seeks to prove

---

[109] *Id.*

[110] Hughey Deposition, Exhibit 23.

intentional discrimination with circumstantial evidence, the court must analyze the case using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for use in Title VII cases.   Under that framework, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable factfinder to determine that he has satisfied the elements of a *prima facie* case.   *Id.* at 802.   A *prima facie* case of retaliation under the FMLA requires a showing that:  (1) the employee engaged in statutorily protected conduct; (2) the employee suffered an adverse employment action; and (3) there is a causal connection between the two.  *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).

IFP elected not to dispute that plaintiff has established a *prima facie* case of FMLA retaliation.  Plaintiff engaged in protected conduct when he took the allegedly protected leave, and a demotion with loss of pay qualifies as an "adverse employment action" for the purposes of his retaliation claim.

The causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated."  *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decisionmaker was aware of the protected conduct at the time of the adverse

38

employment action.  *See Goldsmith*, 996 F.2d at 1163.  The plaintiff can make such a showing by reasonable inference.  *See*, *e.g.*, *Hulbert*, 439 F.3d at 1298 (reversing summary judgment on the plaintiff's FMLA retaliation claim, finding that the jury could reasonably infer that the decisionmaker had knowledge of plaintiff's protected conduct).  Darrel Champion, IFP Plant Manager, signed each of the standard forms that directly contradict plaintiff's testimony that he reported and received approval for his absences.[111]  Plaintiff also has produced evidence indicating that these forms were falsified, and he is, therefore, entitled to the reasonable inference that Mr. Champion, at least one of the relevant decisionmakers, had knowledge of plaintiff's early 2008 FMLA-related absences.  The court concludes, and the parties apparently do not dispute, that plaintiff has established a *prima facie* case of FMLA retaliation.

As explained in the Title VII context above, once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer "to articulate a legitimate reason for the adverse action."  *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008).  If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Id.* at 1298

---

[111] Hughey Deposition, at 148; *see also id.* at Exhibit 23.

(internal quotation marks omitted).  The employee may rely on evidence that he already produced to establish his *prima facie* case.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1993).

Defendant argues that plaintiff cannot demonstrate that his demotion was mere pretext for FMLA retaliation.  Again, IFP contends that its legitimate, non-discriminatory reason for demoting plaintiff was its points-based assessment of his job performance.  Viewing the evidence in plaintiff's favor, the point system could not have been the "real reason" for the adverse employment decision because plaintiff was entitled to retain his position under that system.  In other words, if the trier-of-fact believes the evidence offered by plaintiff in support of his FMLA interference claim, then IFP's proffered legitimate reason cannot stand, because plaintiff would have had more points than Henry Shoulders.  Further, a finding for plaintiff on his interference claim would necessarily mean that IFP violated its own policy of not deducting employee performance points for FMLA-protected absences.[112]   A departure from policy alone may be sufficient to establish pretext.  *See Hulbert*, 439 F.3d at 1299 ("[A]n employer's deviation from its own standard procedures may

---

[112] *See* Hughey Deposition, at 149 ("It would be true that [absences] would not have been counted against [plaintiff] if they were attributed to his diabetes . . . .").

40

serve as evidence of pretext" in FMLA retaliation case).  *See also Bass*, 256 F.3d at 1108 (stating that the employer's violation of its own hiring procedure could be evidence of pretext); *accord Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").

Further, plaintiff testified that he reported the relevant absences as needed pursuant to his intermittent FMLA leave, and that each request was approved.[113] These reports and approvals are not reflected on the standardized absence forms.  As noted above, however, those forms were completed solely by plaintiff's superiors and pushed "ASAP" to IFP's accounting office.[114]   There is nothing in the record indicating that plaintiff had any idea about the content of the reports which deprived him of the ability to challenge any falsely reported information.  Thus, had plaintiff's supervisors desired to misreport his FMLA leave, they had ample opportunity to do so without being held accountable.

In sum, defendant's points-based assessment as a legitimate, non-discriminatory, and non-retaliatory reason for its decision to demote plaintiff, and the evidence supporting that justification, is suspect when analyzed under the law

---

[113] Slatton Declaration, at 1-4.
[114] Hughey Deposition, Exhibit 23.

governing FMLA claims.  IFP has articulated no other reason for selecting plaintiff, rather than Henry Shoulders, for layoff and then demotion.  The court is satisfied that a reasonable factfinder could conclude that defendant's proffered reasons were not the "real reasons," but mere pretext and intentional retaliation for plaintiff's exercise of rights protected under the FMLA.  Summary judgment is, therefore, due to be denied on plaintiff's FMLA retaliation claim.

### IV. CONCLUSIONS

Upon consideration of the foregoing, defendant's motion for summary judgment  is due to be granted in part and denied in part.  Defendant's motion for summary judgment on plaintiff's claims for interference and retaliation under the FMLA will be denied.  All other claims embraced herein will be dismissed with prejudice.  An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 13th day of December, 2010.

_____
United States District Judge

42